IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANGELICA SANDOVAL | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-436-Y |
| | § | |
| MICHAEL J. SCOTT, PC | § | |

ORDER GRANTING MOTION TO DISMISS AND
DENYING MOTION TO STRIKE AFFIDAVITS

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim (doc. 9) and Plaintiff's Motion to Strike Defendant's "Business Records Affidavit" and "Affidavit of Verification" (doc. 13). After review, the Court GRANTS the motion to dismiss and DENIES the motion to strike.

I.  BACKGROUND

Angelica Sandoval, proceeding pro se, has sued Michael J. Scott, PC ("MJS"), for violations of the Fair Debt Collection Practices Act ("FDCPA"). MJS is a law firm engaged in the practice of consumer debt collection. It represents Capital One Bank (U.S.A), N.A. ("Capital One"), the owner of the debt Sandoval allegedly owes under a credit agreement.

According to MJS, it sent its initial demand letter to Sandoval on December 31, 2012. The letter contained a disclosure statement informing Sandoval of her right to dispute the validity of the debt within thirty days of receiving the letter. Sandoval claims that she never received this letter. According to Sandoval, she received her first letter from MJS on March 20, 2013. In that letter, MJS demanded payment of an outstanding debt of $6,026.59

and threatened to file suit against Sandoval if she did not respond within 10 days.  On April 18, Sandoval wrote to MJS and requested a validation of the debt.  In response, MJS claims that it sent Sandoval a verification letter, again disclosing the creditor's name and advising her of the amount she owed.  On April 20, Sandoval received correspondence from MJS notifying her that a lawsuit had been filed against her in state court.

On May 29, Sandoval filed suit in this Court, alleging that MJS violated the FDCPA in various respects in connection with its debt-collection efforts.  In response, MJS filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that because its initial letter to Sandoval contained all of the disclosures required under the FDCPA and Sandoval's request for validation of the debt was untimely, Sandoval has failed to state a claim under the FDCPA.

## II.  LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  This rule must be interpreted in conjunction with Federal Rule of Civil Procedure 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that

Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and her "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the

3

complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

## II.  DISCUSSION

A.  Sandoval's Motion to Strike

As a preliminary matter, the Court must resolve Sandoval's motion to strike the exhibits attached to MJS's motion to dismiss and its reply. In its motion to dismiss, MJS attached a "Business Records Affidavit" along with a copy of the December 31 demand letter. In the affidavit, MJS's records custodian, Michael J. Scott, attests to the authenticity of the letter. MJS attached a second affidavit to its reply, also from Scott, further attesting to the authenticity of the December 31 demand letter. Sandoval urges the Court to strike these attachments because they are unauthenticated, are hearsay, and refer to facts outside of the

4

complaint.

Generally, when a motion is brought under Rule 12(b)(6), a court is limited to the complaint in evaluating the viability of a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "[I]f matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted).  An exception exists for documents attached to a defendant's motion to dismiss, provided they are referred to in the plaintiff's complaint and are central to her claim.  *Id.*

Based on the Court's review of Sandoval's complaint, nearly all her claims originate from the alleged non-receipt of the December 31 demand letter.  Therefore, it is clearly central to her claim and the Court need not ignore its existence.  Further, Sandoval's principal complaint with respect to the letter is that it is unauthenticated.  Other federal courts have refused to exclude documents based solely on a plaintiff's technical challenge to their authenticity. *See Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 812 (N.D. Tex. 2009) (Boyle, J.); *see also Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 285-86 (5th Cir. 2007).  Because Sandoval argues only that the demand letter is unauthenticated, but does not challenge its substantive validity, the Court declines to strike the letter.

5

Sandoval's argument that the affidavits and demand letter should be excluded because they are hearsay is also without merit. Federal Rule of Evidence 803(6)(B) allows for the admission of properly authenticated business records. Although, Sandoval argues that Scott may not authenticate the demand letter because he did not personally draft the letter or prepare it for mailing, neither act is relevant for purposes of proper authentication of a business record. *See U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415 (5th Cir. 2010) (explaining that "there is no requirement that the witness who lays the foundation [for the business-records exception] be the author of the record or be able to personally attest to its accuracy"). Scott, as president and records custodian, has personal knowledge of the recordkeeping practice of MJS and is an appropriate representative to attest to the demand letter's authenticity. *See Goodman v. S. Credit Recovery, Inc.*, No. 97-2385, 1999 WL 14004, *3 (E.D. La. Jan. 8, 1999) (considering affidavit of debt collector's president as proof that initial communication was sent to debtor).

Because the December 31 demand letter was properly authenticated by MJS's record custodian, it is admissible as a business record. Furthermore, because the demand letter is central to Sandoval's claims under the FDCPA, the Court will consider it and need not convert MJS's motion to dismiss into a motion for summary judgment. Sandoval's motion to strike is DENIED.

6

B. Sandoval's Claims Under the FDCPA

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Sandoval contends that MJS's collection efforts violated various provisions of the FDCPA. Specifically, she claims that MJS: (1) failed to provide the required disclosures in its initial demand letter; (2) continued its efforts to collect the debt after she requested validation of the debt; (3) made statements in subsequent demand letters that overshadowed the validation notice; (4) misrepresented the character, status, and amount of the debt; (5) threatened to take, and actually took, an action prohibited by law; (6) collected a debt without being expressly authorized to do so by the agreement creating the debt;(7) filed suit against her using a business, company, or organization name other than its true name; and (8) harassed, oppressed, or abused her by continuing to attempt collection of the disputed debt.

1. Initial Correspondence

The FDCPA requires the debt collector to make certain statutory disclosures to the consumer in its "initial communication." 15 U.S.C. § 1692g(a). Section 1692g(a)(4), the

7

provision central to Sandoval's claims, requires what courts have termed "validation notice," informing the consumer that she has thirty days from receipt of the initial communication to notify the debt collector in writing that the debt is disputed and request validation of the debt.

MJS maintains that its initial communication with Sandoval was sent on December 31 and contained all required disclosures. Sandoval contends that she never received the December 31 letter and claims that her first correspondence from MJS was the follow-up letter received on March 20, which did not contain the required disclosures.

Although not yet addressed by the Fifth Circuit, other courts have held that the FDCPA requires only that the initial validation notice be "sent" by a debt collector. *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999). Based on the plain language of Section 1692g(a), the court concluded that "[a] debt collector need not establish actual receipt by the debtor." *Id.*

Moreover, under the common-law mailbox rule, "proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009). "[P]lacing letters in the mail may be proved by circumstantial evidence,

including customary mailing practices used in the sender's business." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007) (quoting *Wells Fargo Business Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983)).

In his affidavit, Smith states that the initial demand letter was sent via United States Postal Service on December 31. "A sworn statement is credible evidence of mailing for the purposes of the mailbox rule." *Custer*, 503 F.3d at 420; *see also Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 785 (N.D. Ohio 2006) (relying on deposition testimony of debt collector's employee in finding that first statutory notice was sent to consumer). The letter, dated December 28, bears the same address as the follow-up letter, which Sandoval admits she received. The only evidence Sandoval offers in rebuttal is an affidavit swearing that she never received the letter. "The addressee's 'bare assertion of non-receipt' is insufficient to rebut" the mailbox rule's presumption of delivery. *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (quoting *Custer*, 503 F.3d at 421). Even if Sandoval never received the initial demand letter, that "would not controvert that fact that was sent," which is all that is required under the FDCPA. *Goodman v. S. Credit Recovery, Inc.*, No. CIV. A. 97-2385, 1999 WL 14004, *3 (E.D. La. Jan. 8, 1999). Thus, the Court finds that MJS sent the December 31 demand letter, that it was the initial communication with Sandoval, and that she received it.

The Court further finds that the December 31 letter contains all of the required disclosures.  The amount of the debt is listed as $6,026.59.  15 U.S.C. § 1692g(a)(1).  The creditor is identified at Capital One.  15 U.S.C. § 1692g(a)(2).  The letter includes a statement warning Sandoval that if she does not dispute the validity of the debt within thirty days it will be presumed valid.  15 U.S.C. § 1692g(a)(3).  The letter also includes a validation notice stating that MJS will obtain and mail a verification of the debt or provide the name and address of the original creditor if Sandoval disputes the debt or requests information about the original creditor in writing within 30 days of receiving the letter.  15 U.S.C. § 1692g(a)(4)-(5).  Thus, Sandoval has failed to state a claim under the FDCPA for failure to provide statutory disclosures in the initial demand letter.

2. Collection Activities Post-Dispute Notification

Sandoval claims that MJS unlawfully continued collection efforts after she requested validation of the debt.  MJS contends that Sandoval's request was untimely because it was not sent within the thirty-day statutory period.

As just discussed, a debt collector's initial communication must contain a validation notice, notifying the consumer that she has thirty days to dispute the debt in writing.  15 U.S.C. § 1692g(a)(4).  If a consumer disputes a debt in writing within this period, ongoing collection efforts must cease.  15 U.S.C. 1692g(b).

10

Given the Court's findings that the initial correspondence was sent on December 31 and presumed to be received a short time thereafter by virtue of the mailbox rule, Sandoval's April 18 letter disputing the debt and requesting validation was untimely. Because Sandoval failed to dispute the debt within the validation period, MJS had no obligation under section 1692(g)(b) to cease collection efforts against her. *See Ditty v. CheckRite, Ltd.,* 973 F. Supp. 1320, 1329 (D. Utah 1997); *Campbell v. Credit Bureau Sys., Inc.*, No. 08-CV-177-KSF, 2009 WL 211046, *13 (E.D. Ky. Jan. 27, 2009). Sandoval has failed to state a claim based on MJS's collection efforts following her untimely letter disputing the debt and requesting validation.

### 3. Subsequent Correspondence

Sandoval claims that MJS made statements in its subsequent demand letters that "overshadowed" the validation notice. Under the FDCPA, a demand letter sent "during the 30-day [statutory] period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. 1692g(b). Sandoval's claims of overshadowing/contradiction are tied to her contention that MJS's follow-up letter was the initial correspondence. But the Court has rejected that argument and found that the December 31 demand letter was the initial correspondence. None of the correspondence complained of by Sandoval was sent during the 30-day

statutory period; therefore, Section 1692g(b) does not apply. Sandoval's claim under section 1692g(b) is dismissed.

 4. Remaining FDCPA Claims

 Sandoval also claims that MJS misrepresented the character, status, and amount of the debt; threatened to take and took action prohibited by law; collected a debt without being expressly authorized to do so by the agreement creating the debt; filed suit against her using a business, company, or organization name other than its true name; and harassed, oppressed, or abused her by continuing to attempt collection of the disputed debt.

 Based on the Court's review of the complaint, Sandoval has made no allegations that could support the above claims. Sandoval does little more than cite the sections of the FDCPA prohibiting the above actions and alleges few, if any, facts in support of these claims. "It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). Nonetheless, "regardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)). Because Sandoval

12

has not alleged sufficient facts to support these claims, they are DISMISSED.

## IV.   CONCLUSION

The Court concludes that the December 31 demand letter was sufficiently authenticated by MJS's president and record custodian. Therefore, Sandoval's motion to strike is DENIED.   The Court further concludes that because Sandoval has failed to allege sufficient facts in support of her claimed violations of the FDCPA, all of her claims against MJS should be, and hereby are, DISMISSED WITHOUT PREJUDICE.

SIGNED October 9, 2013.


_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE